# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TUFAN SINGH,<br>Petitioner,<br>v.<br>JAMES JANECKA, WARDEN OF THE ADELANTO PROCESSING CENTER, ET AL.,<br>Respondents. | Case No. 5:26-cv-04561-AJR<br>**MEMORANDUM DECISION AND ORDER GRANTING PETITION AND ORDERING IMMEDIATE RELEASE** |

## I.
## INTRODUCTION

On February 6, 2026, Petitioner Tufan Singh (A# 245-703-925) ("Petitioner"), an immigration detainee represented by counsel, filed a Verified Petition for Habeas Corpus pursuant to 28 U.S.C. § 2241 in Case No. EDCV 26-533-WLH-AJR (the "Prior Action"), challenging his detention at the Adelanto Detention Facility by Immigration and Customs Enforcement ("ICE"). (Case No. EDCV 26-533-WLH-AJR, Dkt. 1.) Because the parties agreed that Petitioner was entitled to a bond hearing as a member of the Bond Eligible Class certified in

Maldonado Bautista v. Santacruz, 2025 WL 3288403 (C.D. Cal. Nov. 25, 2025), reconsideration granted in part, 813 F. Supp. 3d 1075 (C.D. Cal. 2025), and amended and superseded on reconsideration, 813 F. Supp. 3d 1084 (C.D. Cal. 2025), judgment entered sub nom. Maldonado Bautista v. Noem, 2025 WL 3678485 (C.D. Cal. Dec. 18, 2025), the Court recommended that Respondents provide such a bond hearing and did not otherwise reach the merits of Petitioner's remaining claims. (Case No. EDCV 26-533-WLH-AJR, Dkt. 11.) On March 12, 2026, the District Judge assigned to the Prior Action accepted this Court's Report and Recommendation and entered Judgment directing Respondents to provide a bond hearing. (Case No. EDCV 26-533-WLH-AJR, Dkts. 13, 14.)

August 12, 2026, Petitioner filed the instant Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 (the "Petition"), once again challenging his detention in immigration custody. (Dkt. 1 at 2-3.) On August 20, 2026, Respondents James Janecka, Warden of the Adelanto Processing Center, Acting Field Office Director for Los Angeles, ICE, Markwayne Mullin, Secretary of the Department of Homeland Security ("DHS"), Todd M. Lyons, and Todd Blanche, Attorney General of the United States (collectively, "Respondents") filed an Answer to the Petition (the "Answer"). (Dkt. 7.) On August 23, 2026, Petitioner filed a Reply in Support of the Petition (the "Reply"). (Dkt. 8.) The parties have consented to proceed before the undersigned U.S. Magistrate Judge for all purposes. (Dkts. 2, 9.) **For the reasons set forth below, the Court GRANTS the Petition and orders Respondents to immediately release Petitioner from custody on his prior conditions of release.**

## II.

## FACTUAL BACKGROUND

The Court sets forth a summary of the relevant factual background based on the facts alleged in the Petition, which is verified by counsel. (Dkt. 1 at 45.)

Respondents had the opportunity to dispute these facts or provide additional facts, but declined to do so. (Dkt. 7.) Therefore, the Court considers the following facts to be undisputed and conceded for purposes of ruling on the Petition. See C.D. Cal. L.R. 7-12; Carlson v. Landon, 186 F.2d 183, 188 (9th Cir. 1950) (explaining that courts must assume undisputed facts alleged in a habeas petition are true).

Petitioner is a native and citizen of India. (Dkt. 1 at 11.) On December 29, 2023, Petitioner was an unaccompanied minor and entered the United States without inspection seeking asylum. (Id.) Petitioner was taken into immigration custody, at which time agents conducted background checks confirming that he had no criminal history, wants, or warrants and was not a threat to national security. (Id.) Based on those findings, ICE determined that Petitioner was not a flight risk or danger to the community. (Id.)

On January 1, 2024, DHS initiated removal proceedings pursuant to 8 U.S.C. § 1229a through the issuance of a Notice to Appear charging Petitioner as inadmissible under Immigration and Nationality Act ("INA") Section 212(a)(6)(A)(i), as a noncitizen present in the United States without being admitted or paroled. (Id.) That same day, a deportation officer exercised discretion under INA Section 236(a) and released Petitioner on his own recognizance, subject to reporting requirements and his appearance at Immigration Court proceedings. (Id.)

Following his release, Petitioner timely filed an application for asylum, withholding of removal, and protection under the Convention Against Torture. (Id.) He also obtained employment authorization from U.S. Citizenship and Immigration Services ("USCIS") and thereafter lawfully worked as a commercial truck driver. (Id. at 11-12.) In approximately March 2025, Petitioner began working for Kartar Trucking, Inc. as an intrastate truck driver. (Id. at 12.) Petitioner's employment required regular deliveries between Fresno and Fontana, California. (Id.) Petitioner resided in Fresno and did not reside in Fontana. (Id.) At times, however, Petitioner briefly stayed at a friend's home in Fontana after completing deliveries. (Id.)

For approximately two years following his release, Petitioner complied with the conditions of his release, appeared as required, and remained available to immigration authorities. (Id.) Petitioner appeared in person at the Fresno ICE office for a scheduled check-in on August 5, 2024, and again on January 11, 2026. (Id.) Petitioner has no criminal history, convictions, or charges. (Id.)

On January 31, 2026, ICE approached Petitioner while he was in Fontana and took him into custody. (Id.) At the time of his re-detention, Petitioner had complied with the conditions of his release and had no criminal history, convictions, or charges. (Id.) On February 27, 2026, while detained, and after a state court granted guardianship, Petitioner filed a Form I-360 Petition for Amerasian, Widower, or Special Immigrant with USCIS, seeking classification as a Special Immigrant Juvenile. (Id.) The Form I-360 Petition remains pending. (Id.)

On February 6, 2026, Petitioner filed a habeas petition in the Prior Action. (Case No. EDCV 26-533-WLH-AJR, Dkt. 1.) On March 12, 2026, the District Judge assigned to the Prior Action entered Judgment directing Respondents to provide a bond hearing. (Case No. EDCV 26-533-WLH-AJR, Dkt. 14.) On July 14, 2026, Petitioner appeared for a bond hearing at which he bore the burden of establishing that he was neither a flight risk nor a danger to the community. (Dkt. 1 at 12-13; Dkt. 1-2 at 19-20.) The Immigration Judge ultimately denied bond based on flight risk. (Dkt. 1-2 at 19-20.)

On July 30, 2026, after Petitioner's detention exceeded six months, the Immigration Court scheduled a bond hearing pursuant to the injunction issued in the Rodriguez class action.[1] (Dkt. 1 at 13.) At the hearing, DHS bore the burden of

---

[1] See Rodriguez v. Holder, 2013 WL 5229795, at *3 (C.D. Cal. Aug. 6, 2013) ("Members of all four subclasses—Sections 1231, 1226(a), 1226(c), and 1225(b)—should be afforded bond hearings after six months of detention, consistent with Rodriguez II. The procedural requirements of the bond hearings should be consistent with the findings of the Ninth Circuit in Singh, and Rodriguez II. Additionally, bond hearings should be provided automatically, and plain language notice, in writing, of (cont'd . . .)

establishing by clear and convincing evidence that Petitioner was a danger to the community or a flight risk. (Id.) The Immigration Judge ultimately denied bond as follows:

> "The Court gave individualized consideration to the applicant's request for bond. However, DHS met its burden to establish by clear and convincing evidence that the applicant's release would pose such a significant flight risk that no amount of bond and/or alternatives to detention would be appropriate.
>
> **Order:**
>
> Bond is denied."

(Dkt. 1-2 at 24.) The Immigration Judge did not provide any other reasoning or conclusions in the Order. (Id.) The Immigration Judge also did not provide any explanation of the ruling orally at the hearing. (Dkt. 1-2 at 40.) Instead, the Immigration Judge simply stated that the matter would be taken under advisement and that the Immigration Judge did not know "if it's going to be a grant or denial of bond, but either way [Petitioner] c[ould] appeal it." (Id.) Petitioner remains detained in immigration custody while his removal proceedings remain pending. (Dkt. 1 at 14.)

---

the bond hearings should be provided to detainees prior to the hearing."), aff'd in part, rev'd in part sub nom. Rodriguez v. Robbins, 804 F.3d 1060 (9th Cir. 2015), rev'd sub nom. Jennings v. Rodriguez, 138 S. Ct. 830 (2018); Rodriguez v. Marin, 2020 WL 13348414, at *1 (C.D. Cal. Mar. 9, 2020) (affirming that the preliminary injunction in the Rodriguez class action continues to apply to individuals detained in the Central District of California under 8 U.S.C. §§ 1225(b), 1226(a), and 1226(c)); Rodriguez v. Marin, 2020 WL 13724475, at *1 (C.D. Cal. May 28, 2020) (denying motion to vacate preliminary injunction and decertify the class). On October 19, 2021, the Ninth Circuit reversed the district court and remanded with instruction to vacate the injunction. See Rodriguez v. Barr, 2021 WL 4871067, at *1 (9th Cir. Oct. 19, 2021). However, the mandate has not issued because the case is currently pending a petition for panel rehearing or rehearing *en banc*, which was initially due on May 22, 2026. (See Ninth Circuit Case No. 20-55770, Dkt. 79.) On September 23, 2026, the Ninth Circuit extended the deadline until October 22, 2026. (See Ninth Circuit Case No. 20-55770, Dkt. 85.) On October 22, 2026, the petitioners filed a Motion to Stay Proceedings or, Alternatively, Petition for Panel Rehearing, which is currently pending. (See Ninth Circuit Case No. 20-55770, Dkt. 86.)

## III.

## SUMMARY OF PETITIONER'S CLAIMS

Petitioner's first claim for relief (Count I) is that his continued prolonged detention violates the Due Process Clause. (Dkt. 1 at 14-31.) Petitioner's second claim for relief (Count II) is that Respondents did not revoke his release in accordance with the governing status and regulations. (Id. at 31-36.) Petitioner's third claim for relief (Count III) is that his re-detention violated the Administrative Procedure Act ("APA"). (Id. at 36-39.) Petitioner seeks immediate release from custody. (Id. at 39-41.) Petitioner further seeks an order enjoining Respondents from re-detaining him absent lawful statutory authority and constitutionally adequate process. (Id. at 41.) Finally, Petitioner seeks an award of reasonable attorneys' fees and costs under the Equal Access to Justice Act ("EAJA"). (Id. at 42.)

## IV.

## LEGAL STANDARD

The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law. See U.S. Const., amend. V. There is no question that these protections extend to noncitizens present in the United States. See, e.g., Trump v. J.G.G., 604 U.S. 670, 673 (2025) (*per curiam*) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." (internal quotation marks omitted)); Zadvydas v. Davis, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); Hussain v. Rosen, 985 F.3d 634, 642 (9th Cir. 2021) ("The Fifth Amendment entitles aliens to due process of law in deportation proceedings." (internal quotation marks and brackets omitted)). Indeed, "the government's discretion to incarcerate noncitizens is always constrained by the requirements of

due process . . . ." Hernandez v. Sessions, 872 F.3d 976, 981 (9th Cir. 2017).

Due process "is a flexible concept that varies with the particular situation." Zinermon v. Burch, 494 U.S. 113, 127 (1990). Indeed, the Due Process Clause provides both procedural and substantive protections. See, e.g., Regino v. Staley, 133 F.4th 951, 959 (9th Cir. 2025) ("This clause protects individuals against two types of government action: violations of substantive due process and procedural due process." (internal quotation marks omitted)). To determine whether detention violates procedural due process, courts frequently apply the three-part test set forth in Mathews v. Eldridge, 424 U.S. 319 (1976). See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022) (collecting cases and applying the Mathews test to a constitutional challenge to detention pursuant to 8 U.S.C. § 1226(a)). Under Matthews, courts weigh the following three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews, 424 U.S. at 335; see also id. at 332 ("Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment.").

In addition to the procedural protections of the Due Process Clause, "[s]ubstantive due process protects individuals from state action that interferes with fundamental rights." Regino, 133 F.4th at 959-60. Governmental action that infringes a fundamental right is constitutional only if "the infringement is narrowly tailored to serve a compelling state interest." Reno v. Flores, 507 U.S. 292, 302 (1993). By contrast, governmental action that does not infringe a fundamental right survives "substantive-due-process scrutiny so long as [the action is] rationally related to legitimate government interests." Stormans, Inc. v. Wiesman, 794 F.3d

1064, 1085 (9th Cir. 2015) (internal quotation marks omitted). To assess whether there has been a violation of a fundamental right, courts must begin with "a careful description of the asserted fundamental liberty interest." Washington v. Glucksberg, 521 U.S. 702, 721 (1997) (internal quotation marks omitted). With that careful description in mind, courts must then decide whether the asserted interest is "objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if it was sacrificed." Khachatryan v. Blinken, 4 F.4th 841, 858 (9th Cir. 2021) (internal quotation marks and brackets omitted).

## V.
## ANALYSIS

It is undisputed that Petitioner entered the United States as an unaccompanied minor on December 29, 2023, was taken into immigration custody, and that immigration authorities determined that Petitioner had no criminal history, wants, or warrants, and was not a threat to national security. (Dkt. 1 at 11.) It is further undisputed that on January 1, 2024, immigration authorities exercised discretion to release Petitioner on his own recognizance, subject to reporting requirements and his appearance at Immigration Court proceedings.[2] (Id.) Thus, the Court concludes that once Petitioner was released from custody, Petitioner acquired "a protected liberty interest in remaining out of custody." Pinchi v. Noem, 792 F.Supp.3d 1025, 1032 (N.D. Cal. July 24, 2025) (collecting cases); Guillermo M. R. v. Kaiser, 791 F. Supp. 3d 1021, 1030 (N.D. Cal. 2025) ("The Supreme Court has recognized this protected liberty interest even though the released individual is subject to extensive

---

[2] The fact that Petitioner was released from custody necessarily means that Petitioner demonstrated to the satisfaction of immigration officials that Petitioner's release would not pose a danger to property or persons and that Petitioner was likely to appear for any future proceeding. See Fernandez Lopez v. Wofford, 2025 WL 2959319, at *2 (E.D. Cal. Oct. 17, 2025).

conditions of release, like reporting regularly to a parole officer, not using alcohol, and not traveling out of the country."). Indeed, "the government's decision to release an individual from custody creates an implicit promise, upon which that individual may rely, that their liberty will be revoked only if they fail to live up to the conditions of release." Pinchi, 792 F.Supp.3d at 1032 (internal quotation marks, brackets, and ellipses omitted). This "liberty is valuable and must be seen as within the protection of the [Due Process Clause]." Morrissey v. Brewer, 408 U.S. 471, 482 (1972).

Petitioner's liberty interest in remaining out of custody is strengthened by the length of time he has resided out of custody and built a life for himself in the United States. See, e.g., Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025) ("The lengthy duration of his conditional release as well as the meaningful connections Petitioner seems to have made with his community during that time create a powerful interest for Petitioner in his continued liberty."). Indeed, it is undisputed that Petitioner timely filed an application for asylum, withholding of removal, and protection under the Convention Against Torture. (Dkt. 1 at 11.) It is further undisputed that Petitioner obtained employment authorization from USCIS and thereafter lawfully worked as a commercial truck driver.[3] (Id. at 11-12.) Petitioner also filed a Form I-360 petition seeking classification as a Special Immigrant Juvenile, which remain spending. (Id. at 12.) Petitioner's undisputed ties to the community further strengthen his liberty interest in remaining out of custody. See, e.g., Garcia v. Andrews, 2025 WL 1927596, at *4 (E.D. Cal. July 14, 2025) ("The length of time and the connections Petitioner made with his community during that time create a powerful interest for Petitioner in his continued liberty.").

It is also undisputed that Petitioner was re-detained by immigration

[3] The fact that Petitioner was granted employment authorization necessarily means that Petitioner's asylum application was neither frivolous nor abandoned. See 8 C.F.R. § 208.7.

authorities on January 31, 2026, without prior notice or a pre-deprivation hearing. (Dkt. 1 at 12; Dkt. 1-2 at 65.) It is further undisputed that at the time of his re-detention, Petitioner had complied with the conditions of his release and had no criminal history, convictions, or charges. (Dkt. 1 at 12; Dkt. 1-2 at 65.) Thus, the Court concludes that Petitioner's re-detention by immigration authorities on January 31, 2026, without notice or a pre-deprivation hearing, violated Petitioner's procedural due process rights. See, e.g., Mourey v. Bowen, 2026 WL 467567, at *4 (C.D. Cal. Jan. 31, 2026) ("Pursuant to the holding in Mathews, Petitioner should have been afforded a pre-detention hearing."), report and recommendation adopted, 2026 WL 464788 (C.D. Cal. Feb. 17, 2026); Fernandez Lopez v. Wofford, 2025 WL 2959319, at *6 (E.D. Cal. Oct. 17, 2025) ("On balance, the Mathews factors show that petitioner is entitled to a bond hearing, which should have been provided before she was detained."); Maldonado Vazquez v. Feeley, 805 F. Supp. 3d 1112, 1148 (D. Nev. 2025) ("Where, as here, a noncitizen is detained after having been ordered released, without any process provided by the Government for challenging his continued detention, detention becomes arbitrary and violates due process.").

Respondents contend that Petitioner cannot seek relief related to his arrest and detention because he already raised these claims in the Prior Action. (Dkt. 7 at 2.) However, the Judgment in the Prior Action did not adjudicate Petitioner's procedural due process claims and instead held that Petitioner was entitled to certain relief as a member of the Bond Eligible Class certified in Maldonado Bautista v. Santacruz. (Case No. EDCV 26-533-WLH-AJR, Dkt. 14.) Thus, the Prior Action is no bar to Petitioner raising procedural due process claims in this action. Given the foregoing violation of Petitioner's due process rights, the Court concludes that "Petitioner's release is necessary to return him to the status quo." Nazarian v. Noem, 2025 WL 3236209, at *7 (C.D. Cal. Nov. 3, 2025). The status quo is "the last uncontested status which preceded the pending controversy." GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1210 (9th Cir. 2000) (internal quotation marks

omitted). The last uncontested status here is Petitioner's release from custody under his prior conditions of release. See Nazarian, 2025 WL 3236209, at *7 ("The last uncontested status in this case is Petitioner's release on his second OSUP before his current re-detention."). "Accordingly, Petitioner's release from custody is the appropriate remedy." Id.; see Esmail v. Noem, 2025 WL 3030590, at *6 (C.D. Cal. Sept. 12, 2025) ("Providing Petitioner an interview *ex post facto*, while keeping him detained in ICE's custody, would not remedy the apparent constitutional violation that Petitioner has suffered in being re-detained without any measure of due process. The fact that he was not given an interview renders his detention unlawful in the first place, necessitating his release.").

The Court has considered the fact that Petitioner received post-deprivation bond hearings on July 14, 2026, and July 30, 2026, and the impact of those bond hearings on the due process analysis. (Dkt. 1-2 at 19-20, 24.) However, the Court concludes that the July 14, 2026 bond hearing was insufficient to adequately safeguard Petitioner's substantial liberty interest in remaining out custody because the Immigration Judge placed the burden of proof on Petitioner. (Dkt. 1-2 at 19-20.) As set forth above, given Petitioner's lengthy residence in the United States and substantial ties to the community, he has a substantial liberty interest which requires the burden of proof to be placed on Respondents by clear and convincing evidence. See Singh v. Holder, 638 F.3d 1196, 1205 (9th Cir. 2011) (finding that the petitioner was entitled to habeas relief where he was prejudiced by an immigration judge's application of the incorrect standard of proof at his bond hearing because it "might" "have affected the outcome of the bond hearing").

The Court further concludes that the July 30, 2026 bond hearing also was insufficient to adequately safeguard Petitioner's substantial liberty interest in remaining out of custody, despite the fact that the Immigration Judge placed the burden of proof on Respondents. (Dkt. 1-2 at 24.) The problem with the July 30, 2026 bond hearing is that the Immigration Judge failed to provide any reasoning or

rationale for the ultimate decision to deny bond, either orally or in the written Order. (Dkt. 1-2 at 24, 40.) Therefore, to the extent Respondents rely on the July 30, 2026 bond hearing as the overriding, legally operative basis for Petitioner's detention, the bond hearing constitutes an abuse of discretion. See Franco-Rosendo v. Gonzales, 454 F.3d 965, 966 (9th Cir. 2006) ("The BIA abuses its discretion when it fails to consider and address in its entirety the evidence submitted by a petitioner and to issue a decision that fully explains the reasons for denying a motion to reopen." (internal quotation marks omitted)); Miri v. Bondi, 2026 WL 622302, at *9 (C.D. Cal. Mar. 5, 2026) (holding that immigration judge abused its discretion in denying bond because the judge "did not explain the reasons for denying Miri's bond," and "did not describe which Martinez factors were considered, if any, or what evidence was relied on"); Vasquez Lopez v. Hernandez, 2026 WL 984151, at *3 (W.D. Wash. Apr. 13, 2026) ("The Court is left to speculate concerning how the immigration judge viewed the evidence in light of the applicable factors. The Court must conclude that the immigration judge failed to do so, which constitutes an abuse of discretion."); Lopez Santana v. Marin, 2026 WL 1179732, at *2 (E.D. Cal. Apr. 30, 2026) ("The IJ's failure to provide any explanation for the bond denial, including addressing the evidence submitted and the factors that the IJ considered, was an abuse of discretion.").

In light of the fact that the neither the July 14, 2026, nor the July 30, 2026 bond hearings were sufficient to adequately safeguard Petitioner's substantial liberty interest in remaining out of custody, the Court concludes that the great weight of authority finding post-deprivation bond hearings insufficient to cure a violation of procedural due process applies here. See, e.g., E.A. T.-B. v. Wamsley, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025) ("Although the Government notes that Petitioner may request a bond hearing while detained, such a post-deprivation hearing cannot serve as an adequate procedural safeguard because it is after the fact and cannot prevent an erroneous deprivation of liberty."); Domingo v. Kaiser, 2025 WL

1940179, at *3 (N.D. Cal. July 14, 2025) ("Even if Petitioner-Plaintiff received a prompt post-detention bond hearing under 8 U.S.C. § 1226(a) and was released at that point, he will have already suffered the harm that is the subject of his motion: that is, his potentially erroneous detention."). Indeed, "an increasing wave of district courts have concluded[] [that] a post-hoc bond hearing cannot support [a] [p]etitioner's continued detention when the underlying arrest, revocation of parole, and re-detention were in violation of [the] [p]etitioner's due process rights and, thus, invalid." Orellana, Rivera v. J. Johnson, 2026 WL 1390433, at *1 & n.2 (C.D. Cal. May 14, 2026) (citing Mumaev v. Semaia, 2026 WL 530765, at *6 (C.D. Cal. Feb. 20, 2026); Charaf v. Rios, 2026 WL 1270754, at *1 (C.D. Cal. May 5, 2026); Morales v. U.S. Immigr. and Customs Enf't, 2026 WL 1026234 (C.D. Cal. Apr. 15, 2026); Osmel v. D. Marin, 2026 WL 1209477, at *3 (C.D. Cal. Apr. 29, 2026); Singh v. Janecka, 2026 U.S. Dist. LEXIS 95798, at *16–17 (C.D. Cal. Apr. 29, 2026)). Thus, the Court concludes that only return to the status quo can remedy the violation of Petitioner's due process rights in this case.

Moreover, the Court concludes that due process requires notice and a pre-deprivation hearing before Petitioner may be re-detained.[4] See, e.g., Baltazar v. Noem, 2026 WL 413527, at *5 (C.D. Cal. Jan. 30, 2026) ("Where courts have found the procedural due process violation examined here, they routinely order release and enjoin Respondents from re-detaining petitioners without providing a pre-detention

---

[4] As set forth above, Petitioner has a substantial liberty interest in remaining free from detention which must be considered under the first Matthews factor. Under the second Matthews factor, the risk of erroneous deprivation is very high because it is undisputed that Petitioner had complied with the conditions of his release and had no criminal history, convictions, or charges. (Dkt. 1 at 12.) It is also undisputed that Petitioner obtained employment authorization from USCIS and was lawfully working as a commercial truck driver. (Id. at 11-12.) Finally, under the third Matthews factor, the Government's interest in detaining Petitioner without a pre-deprivation hearing is very low because a bond hearing is routine and can be easily provided. See Carballo v. Andrews, 2025 WL 2381464, at *8 (E.D. Cal. Aug. 15, 2025).

hearing before a neutral arbiter."); Ixchop Perez v. McAleenan, 435 F. Supp. 3d 1055, 1062 (N.D. Cal. 2020), appeal dismissed sub nom. Perez v. McAleenan, 2020 WL 8970669 (9th Cir. Dec. 4, 2020) ("Accordingly, this court will join the consensus view among District Courts concluding that . . . where . . . the government seeks to detain an alien pending removal proceedings, it bears the burden of proving that such detention is justified." (internal quotation marks omitted)). Specifically, the Court concludes that Respondents must provide "a pre-deprivation hearing before a neutral arbiter, at which Respondents will bear the burden of establishing, by clear and convincing evidence, that Petitioner poses a danger to the community or is a flight risk." Baltazar, 2026 WL 413527, at *6; see also Mourey, 2026 WL 467567, at *6 ("If the Government seeks to re-detain Petitioner, he must be provided some kind of hearing before the state deprives him of his liberty. Further, such hearing must be before a neutral arbiter in which the Government bears the burden of providing by clear and convincing evidence that Petitioner is a flight risk or danger to the community." (internal quotation marks, brackets, and citation omitted)); Carballo, 2025 WL 2381464, at *8 ("On balance, the Mathews factors show that petitioner is entitled to a bond hearing where the government must prove by clear and convincing evidence that he is presently a flight risk or danger to the community."). Thus, the Court concludes that the Petition must be granted with the foregoing prospective injunctive relief.

A permanent injunction may be entered, at the discretion of the Court, where the movant shows "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391, (2006). The Court finds that Petitioner has made such a showing here. Petitioner has suffered an irreparable injury by being re-detained in violation

of his due process rights, and would again if Respondents repeat such conduct. Legal remedies such as damages would be inadequate to cure the unconstitutional deprivation of liberty. And the balance of hardships and public interest in merely requiring Respondents to provide basic due process in the event they seek to re-detain Petitioner, versus forcing Petitioner again to suffer detention and file a habeas petition to secure his release, favor the imposition of a limited injunction against future re-detention without notice and a pre-deprivation hearing.[5]

Thus, the Court concludes that Petitioner has made a sufficient showing under the eBay Inc. factors to justify a limited permanent injunction targeted at the specific harms presented in this case. See, e.g., Huy Cu v. Marin, 2026 WL 1427009, at *1-3 (C.D. Cal. May 21, 2026) (rejecting objections that prospective injunctive relief is inappropriate in the context of an immigration habeas petition); Araujo-Contreras v. Janecka, 2026 WL 1625368, at *1-4 (C.D. Cal. June 3, 2026) (rejecting objections to permanent injunctive relief requiring a pre-deprivation hearing before re-detention in the context of an immigration habeas petition finding a violation of the petitioner's procedural due process rights).

Finally, the Court notes that Petitioner also requested an award of reasonable attorneys' fees and costs. (Dkt. 1 at 42.) The Court will consider an application under the Equal Access to Justice Act ("EAJA") that is filed within 30 days of entry of final judgment in this action. See Rahimi v. Semaia, 2026 WL 246066, at *3 (C.D. Cal. Jan. 27, 2026) ("The Court will consider an application requesting costs and reasonable attorney's fees under the EAJA that is filed within 30 days of final judgment in this action.").

---

[5] Where the party opposing injunctive relief is the government, "the third and fourth factors—the balance of equities and the public interest—merge." Garcia v. County of Alameda, 150 F.4th 1224, 1234 (9th Cir. 2025) (internal quotations omitted).

## VI.

## CONCLUSION

Based on the foregoing, the Court GRANTS the Petition as follows. Respondents shall immediately release Petitioner Tufan Singh (A# 245-703-925) ("Petitioner") from custody on his prior conditions of release (only those conditions in place prior to Petitioner's January 31, 2026 re-detention). Respondents shall also immediately return any confiscated property and documents to Petitioner upon release. Respondents shall not re-detain Petitioner pursuant to 8 U.S.C. § 1226 without providing at least seven (7) days' notice and a pre-deprivation bond hearing. The pre-deprivation bond hearing shall occur before an Immigration Judge at which the Government bears the burden of proof to show by clear and convincing evidence that Petitioner is a flight risk or a danger to the community and that no condition or combination of conditions could reasonably assure Petitioner's future appearance and/or the safety of the community. The Immigration Judge must conduct an individualized assessment of Petitioner's suitability for bond in light of the forgoing standard. Respondents shall file a notice of compliance no later than **three days from entry of Judgment**.

IT IS SO ORDERED.

DATED: November 2, 2026

Joel Richlin

HON. A. JOEL RICHLIN
UNITED STATES MAGISTRATE JUDGE